[L. A. No. 1149.   Department One.—December 12, 1903.]

In the Matter of the Application of E. J. CARTER for Writ of Certiorari.

PUBLIC OFFICE—ABSENCE OF PROPERTY RIGHT—PUBLIC AGENCY—TERMINATION BY SOVEREIGN POWER.—The right to hold a public office is not a species of property protected by the provisions of the constitution of the United States that no person shall be deprived of property without due process of law. A public office is a mere public agency, which may be terminated by the sovereign power which created it, and the incumbent has no private property in the office which the sovereign power must respect, in a controversy as to the right of removal therefrom.

ID.—CONDITIONS OF INCUMBENCY AND REMOVAL.—In creating an office the government can impose such limitations and conditions with respect to its duration and termination as may be deemed best,

and the incumbent takes the office subject to the conditions which accompany it. It may always be terminated in such manner and by such means as are prescribed by the law which created it, whether it provides for a removal for cause, upon notice, hearing, and a judicial proceeding, or summarily and without a hearing.

ID.—TEST OF RIGHT TO JUDICIAL INQUIRY.—The incumbent of an office has no constitutional right to a judicial inquiry and decision upon removal; and if he is removed in strict accordance with the law, it is no objection to the validity of the removal that it was done without notice or investigation, if the law does not require it. The question whether the proceeding for removal is judicial in character depends on whether or not the proceeding prescribed by the law is or is not of that description.

ID.—REMOVAL BY MAYOR UNDER CHARTER "FOR CAUSE"—SUBSEQUENT NOTICE—REMOVAL NOT JUDICIAL—CERTIORARI.—Under a city charter giving to the mayor a power of appointment, and a power to remove "for cause" any person holding office by his nomination or appointment, and requiring a subsequent written notice thereof, stating the cause to the person removed, and immediate notice to the council of his action and the reasons therefor, the exercise of the power of removal so given does not involve judicial functions, and the propriety of the removal cannot be reviewed upon *certiorari.*

ID.—EFFECT OF IMPROPER REMOVAL—OTHER REMEDIES—NUGATORY ACT. —If there is an unlawful attempt to exercise the power of removal, other equally efficient remedies are available to the officer. The prescribed mode must be pursued, or the act will be nugatory. If no cause is assigned, or no notice given, or if the cause is, in law, no cause, the attempt to remove will be ineffectual, and may be ignored by those interested.

APPEAL from a judgment of the Superior Court of San Diego County. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

Stearns & Sweet, for Appellant.

J. Wade McDonald, J. S. Callen, and A. Ruef, for Respondent.

SHAW, J.—This is an appeal by the petitioner from a judgment of the superior court of San Diego County in favor of the respondent. The proceeding was in *certiorari,* to review the order of the respondent, Frank P. Frary, as mayor of the city of San Diego, removing the petitioner from the

office of fire commissioner of the city. By the terms of the charter the fire commissioner is appointed by the mayor, subject to confirmation by the board of delegates, and holds office for the term of four years. (Stats. 1889, p. 720.) The mayor is given power to remove for cause any person holding office by his nomination or appointment. (Stats. 1889, p. 661.)

The respondent makes the preliminary objection that in making the order of removal the mayor was not exercising judicial functions, but was acting in his executive capacity, and hence that his action cannot be reviewed on *certiorari*, which lies only to review the proceedings of a tribunal, board, or officer exercising judicial functions. (Code Civ. Proc., sec. 1068.)

The authorities on the question whether or not the removal of a public officer for cause necessarily involves the exercise of judicial functions are very conflicting. Numerous decisions can be found on each side of the question. In Mechem on Public Offices (sec. 454) it is said: "Where the appointment or election is made for a definite term, or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing;" and the authorities are practically uniform that, where such notice and hearing is necessary to the lawful exercise of the power, the proceeding is judicial or quasi-judicial in character.

An examination of the decisions on this side of the question shows that in the great majority of the decided cases the power of removal could be exercised under the law in force only by a proceeding which involved a notice to the officer and the hearing of a charge as a condition precedent. There are some cases, however, holding that where the statute prescribes no preliminary proceeding, but authorizes a removal "for cause," there must be a notice and hearing, and that in such cases the proceeding is judicial. (*State* v. *Donovan*, 89 Me. 451; *Andrews* v. *Board*, 94 Me. 76; *State* v. *Walbridge*, 119 Mo. 383;[1] *McGregor* v. *Supervisors*, 37 Mich. 389; *Merrick* v. *Board*, 41 Mich. 630; *Hayden* v. *Memphis*, 100 Tenn. 582; *State* v. *Council*, 53 Minn. 242;[2] *Markley* v. *Cape May*, 55

[1] 41 Am. St. Rep. 663.             [2] 39 Am. St. Rep. 595.

N. J. L. 105.)    The basis of these decisions, sometimes expressly stated, but always apparently assumed, is, that the right to hold public office is a species of property which is protected by the provisions of the United States constitution declaring that no person shall be deprived of property without due process of law, and that no law shall be passed impairing the obligation of contracts. This proposition is assumed without argument. There is no doubt that it is erroneous. A public office is a mere public agency created by the people for the purpose of the administration of the necessary functions of organized society, and the agency may at any time be terminated by the power which created it. As between the office-holder and individuals in their private capacity, and perhaps as against any authority except the sovereign power itself acting in pursuance of a power of removal expressly reserved or necessarily implied from the nature of the office, the officer is entitled to the full protection of the law in his right to hold the office practically to the same extent as if it were private property. But here we have a controversy between the office-holder and that functionary of sovereignty who is invested with the power of removal, and the question is whether or not the officer has a right to the office which the sovereign power which conferred it must respect as private property. The authorities are uniform that in such a controversy the office has not the characteristics of property. (Throop on Officers, secs. 345, 346, subds. 17, 18, 19; *Connor* v. *Mayor,* 5 N. Y. 296; S. C., 2 Sand. 369; *Nichols* v. *McLean,* 101 N. Y. 533;[1] *Hoboken* v. *Gear,* 27 N. J. L. 273; *Kenny* v. *Hudspeth,* 59 N. J. L. 322; *State* v. *Council,* 53 Minn. 242;[2] *Donahue* v. *County of Will,* 100 Ill. 94.) In the case last cited the court says: "It is impossible to conceive how, under our form of government, a person can own or have title to a governmental office. Offices are created for the administration of public affairs. When a person is inducted into an office, he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office, or had any title to it. . . . The officer does not own the title to the office in the manner

---

[1] 54 Am. Rep. 730.                [2] 39 Am. St. Rep. 595.

that men own property; but by his commission or induction into office he acquires the legal right to exercise its functions until the end of his term, or until his resignation, removal, or its forfeiture.''

It logically follows from these principles that in creating an office the government can impose such limitations and conditions with respect to its duration and termination as may be deemed best, and that in such a case the incumbent takes the office subject to the conditions which accompany it. It may always be terminated in such manner and by such means as are prescribed by the law which created it. The law may provide that a removal can be made only for cause, and after a notice, hearing, and decision, which shall have all the attributes of a judicial proceeding, or it may provide that it shall be made only for cause, but summarily and without a hearing. In either case the officer takes with knowledge of the condition; and if he is removed in strict accordance with the law it is no objection to the validity of the removal to say that it was done without notice or investigation, where the law does not require it. He has no constitutional right to a judicial inquiry and decision. The question whether the proceeding is judicial in character, therefore, depends on whether or not the proceeding prescribed by the law is or is not of that description.

In the present case the power of removal is given by the following section of the charter:—

''The mayor shall appoint all officers whose election or appointment is not otherwise specially provided for in this charter or by law. He shall have power to remove, for cause, any person holding office by his nomination or appointment; and in case of such removal shall give written notice thereof, stating the cause, to the person removed, and shall immediately notify the common council of his action and the reasons therefor.'' (Charter, art. III, sec. 7; Stats. 1889, p. 661.)

We do not wish to be understood as expressing any opinion as to the nature of proceedings for the removal of officers or public employees where the law requires charges to be made, followed by a notice to the officer and a hearing and investigation as to the charge, as a condition precedent to the

removal. In the case before us no such proceeding is required. In *Hoboken* v. *Gear*, 27 N. J. L., at page 286, the court, speaking with reference to a like power of removal vested in the common council, says: "It is contended that by using the terms 'for cause may remove,' the legislature intended to erect the council into a kind of judicial tribunal, which could not get jurisdiction of the person without notice. Such could not have been their intent. If they had so intended, they would probably have given some more provisions for its regulation, some provisions for serving notice, of compelling the attendance and swearing of witnesses; they would, at least, have used the usual terms in organizing such a tribunal. The expression is not 'for cause shown,' but simply 'for cause.' . . . It could never have been intended that upon every complaint the council should, like the Senate of the United States, resolve themselves into a high court of impeachment, to try whether or not a poundkeeper or a night scavenger had been guilty of malversation in office." The language of the section above quoted not only fails to require any hearing or proceeding, but also strongly implies that the removal shall be summary, and without any antecedent proceeding. It requires that the mayor shall give to the officer removed a written notice thereof, stating the cause, and that a similar notice shall be given to the council. If a previous notice was necessary, and a hearing of the charges was required, before a removal could be made, it would be absurd to require a subsequent notice to the same effect. We are of the opinion that it was intended that there should be no previous notice or hearing. The notice to be given afterwards is not for the purpose of enabling the officer in question to make a defense or offer evidence relating to the cause, but merely for the purpose of informing him thereof, and of making the same a matter of record. We are not inclined to hold that a power to remove without notice or hearing is a judicial function, particularly where the effect would be that this court, and the superior courts generally throughout the state, would be called upon practically to superintend the administration of the executive department in matters which often require the summary exercise of power without the delays of legal proceedings. Where no further proceedings are prescribed in the statute giving

power of removal than such as are embraced in the section in question, it should not be held to constitute an exercise of judicial functions, but rather an act of the executive department of the state.

"All political, legislative, and ministerial boards and officers are constantly, and indeed perpetually, called upon to make decisions affecting the conduct of matters intrusted to them. They exercise their judgments in so doing, and they determine the existence or non-existence of facts. . . . Such decisions, however, are not judgments pronounced by a judicial tribunal." (*Frasher* v. *Rader*, 124 Cal. 134.) The following cases hold that the power to remove an officer for cause is not judicial in character: *Donahue* v. *County of Will*, 100 Ill. 94; *Connor* v. *Mayor*, 5 N. Y. 285; *State* v. *Hawkins*, 44 Ohio St. 98; *Dongan* v. *District Court*, 6 Colo. 534; *Dakota* v. *Cox*, 6 Dak. 510; *Trimble* v. *People*, 19 Colo. 196;[1] *Wilson* v. *People*, 90 Ill. 204; *People* v. *Higgins*, 15 Ill. 110; *State* v. *Johnson*, 30 Fla. 433; *Heffran* v. *Hutchins*, 160 Ill. 554;[2] and see *Clay* v. *Stuart*, 74 Mich. 411.[3]

If there is an unlawful attempt to exercise such power, other equally efficient remedies are available to the officer. The prescribed mode must be strictly pursued or the act will be nugatory. If no cause is assigned, or no notice given, or if the cause is, in law, no cause, the attempt to remove will be ineffectual, and may be ignored by those interested.

The case of *People* v. *Supervisors*, 10 Cal. 344, is cited as holding that proceedings to remove an officer are necessarily judicial in character. That case is clearly distinguishable from the one at bar. At that time an act of the legislature provided, as section 964 of the Political Code now provides, that the officer required to approve official bonds could, upon subsequent information as to the insufficiency thereof, require a new bond to be given, and for a failure to comply with such requirement could cite the officer to appear at a time specified and show cause why he should not be removed, and upon such hearing could remove the officer if the new bond was not given as required after the hearing. The power to entertain these proceedings was lodged in the county judge. The county

---

[1] 41 Am. St. Rep. 236.          [3] 16 Am. St. Rep. 640.
[2] 52 Am. St. Rep. 353.

board of supervisors attempted to exercise the power, although the law did not give it to them. The court held that the proceeding was quasi-judicial in nature, and that, as the supervisors had attempted to exercise the power in the absence of any authority, it was clearly an attempt to exercise judicial power which they did not possess. The distinction between that case and this is, that in that case the express provisions of the law had prescribed a proceeding which had all the attributes of a judicial proceeding, and therefore it was declared to involve the exercise of judicial functions. In the case at bar, as we have seen, there is no such express provision, and the proceeding which is required cannot be declared to be an exercise of judicial functions. It follows from these considerations that the mayor was not exercising judicial functions in making the removal complained of, and hence that a writ of *certiorari* will not lie. This, as we understand it, was the conclusion of the court below, and we entirely agree with that conclusion.

The judgment appealed from is affirmed.

Angellotti, J., and Van Dyke, J., concurred.