[Sac. 5265. In Bank.—January 30, 1939.]

EDGAR D. FARNEY, Appellant, v. THE STOCKTON PORT DISTRICT et al., Respondents.

[S. F. No. 16132. In Bank.—January 30, 1939.]

EDGAR D. FARNEY, Petitioner, v. THE STOCKTON PORT DISTRICT et al., Respondents.

654

Gumpert & Mazzera and J. Calvert Snyder for Appellant and Petitioner.

Louttit, Marceau & Louttit for Respondents.

WASTE, C. J.—The above-entitled proceedings were separately commenced by the petitioner seeking writs of mandate to compel the respondent Port District and its Board of Port Commissioners to take certain action, hereinafter to be specified, in connection with licensing him as a pilot in and for the respondent district. Inasmuch as the two proceedings more or less complement each other, we shall consider and determine the issues involved in one opinion.

It appears that the proceeding first above entitled (Sac. No. 5265) originated in the Superior Court in and for the County of San Joaquin by the filing of a petition wherein the petitioner alleged that the respondents had theretofore issued to him a pilot commission for the term of one year and that prior to the expiration thereof and without cause or notice to him had suspended and revoked the same. It was prayed that a peremptory writ issue compelling the respondent board to reinstate the pilot commission or license theretofore issued to him and which had not then expired. Following several amendments of the petition, respondents' demurrer thereto was sustained without leave to amend. Petitioner appealed from the judgment thereafter entered to the District Court of Appeal of the Third Appellate District. That court affirmed the judgment for reasons not necessary to here mention and in denying a rehearing declared that "the issue which was involved on the appeal in this proceeding became moot before the appellant's [petitioner's] brief was filed therein, and that the granting of a peremptory writ of *mandamus* as

prayed for would serve no useful or beneficial purpose''. In other words, the term of the one-year commission or license issued to petitioner, which had been revoked and which by said proceeding he sought to have reinstated, had in the interim completely expired and the issuance of a writ could not possibly serve the only purpose for which it was sought. An appellate court will not review or determine questions which have become moot, since the decision will serve no useful or beneficial purpose. (*O'Neal* v. *Seabury*, 24 Cal. App. (2d) 308, 311 [74 Pac. (2d) 1082].) As to the determination of a *mandamus* proceeding, it is stated in 38 C. J. 949, section 750, that ''Ordinarily moot questions will not be considered; and, where pending the review events have occurred rendering a decision of the legal questions involved unnecessary or useless, the court will not pass upon them.''

Though we were, and still are, of the view that the proceeding first above entitled was moot, we nevertheless granted the petition for hearing therein because of the almost simultaneous filing with this court of a separate and distinct petition (S. F. No. 16132, second above-entitled matter) wherein petitioner sought a writ of mandate directing the respondents to issue to him another or renewal commission or license as pilot for one year commencing with the expiration of the old or former license. In support of this application the petitioner refers us to section 1101 of the Harbors and Navigation Code of this state. That section provides that ''Pilots licensed by commissioners shall be carefully examined as to their qualifications, and, if found to be qualified and worthy, they shall receive licenses as pilots for a term of twelve months. Licenses shall be renewed annually unless the commissioners have good cause to withhold renewal. Whenever the commissioners deem they have cause, or intend for any reason to withhold renewal of a pilot's license, the secretary of the board of commissioners shall serve notice in writing, on the pilot, specifying the causes, at least ten days before the expiration of his license. The pilot is thereupon entitled to a full hearing before the board.''

Petitioner alleges, among other things, that respondents, without cause or notice to him, have refused to renew his license in asserted violation of the quoted code section. He also urges that the language of this section is such as to require a determination herein as to the propriety of the revo-

cation of his prior license in order to give effect to the remaining provisions of the cited section calling for notice and hearing when a renewal of license is to be refused. As we shall presently show, section 1101, *supra,* is inapplicable here and without effect upon licenses or commissions issued by the respondent district. This, in effect, is the theory of the respondents in support of their demurrer to the petition filed in the second above-entitled proceeding, now under consideration. They urge that the provisions of section 1101 of the Harbors and Navigation Code, relied on by the petitioner, as indicative of his right to a one-year license together with a renewal thereof for a similar period, in the absence of notice, hearing and the showing of cause for any other or different action, appear in a portion of the code which is here inapplicable because of the specific provisions of another portion thereof governing port districts having the status of the respondent district.

We have examined the Harbors and Navigation Code (Stats. 1937, chap. 368), which is the counterpart of many former scattered sections of the Civil and Political Codes. In our investigation thereof we have directed attention to the sections of said code having to do particularly with the licensing and regulating of pilots. In this connection we have found that section 1101, relied on by petitioner and quoted above, appears in chapter 1 of division V of the code. Our examination satisfies us that said section, providing as it does for the issuance of pilot licenses for terms of one year with provision for renewal thereof and notice and hearing in the event of nonrenewal, is not to be applied to all pilot licenses issued under state authority. This conclusion is suggested by the provisions of the many other specific and frequently conflicting sections controlling the licensing and regulating of pilots by the governing boards of the several bay, harbor, port and other districts provided for and mentioned in the code. Among such other provisions governing the licensing and regulating of pilots we find the following:

Chapter 2 of division V of said code (containing sections 1150 to 1193) specifically provides for the licensing, regulation, suspension, etc., of pilots by the appropriate board of pilot commissioners for San Francisco, San Pablo and Suisun Bays. Sections 1154 of the chapter grants the board power to make by-laws and rules for the government of pilots ap-

pointed by it. Section 1160 provides that the board shall renew the licenses of, or examine and license, not less than fifteen nor more than twenty bar pilots and not more than five bay pilots. Under the provisions of section 1190 of said chapter, the board of pilot commissioners for the three named bays may summarily suspend pilots appointed by it for designated causes and may then investigate and decide the complaint. Sections 1191 and 1192 provide for the suspension and revocation of licenses of pilots for other specified causes following a ten-day notice to the pilot and hearing thereon. In the event the license of a pilot for one of these bays is not to be *renewed,* he is entitled (under section 1193) to a trial and hearing (no definite period of notice being prescribed) and the decision of the board is open to review, by trial *de novo,* in the superior court. Thus it would appear that the legislature by specific enactments has cared for the licensing and regulating of pilots for San Francisco, San Pablo and Suisun Bays.

Chapter 3 of the code, *supra,* indicates that they have similarly specifically legislated as to Humboldt Bay for therein it is provided that the board of pilot commissioners for said bay "may appoint . . . such number of pilots as are necessary, who shall be subject to removal by the board at any time". (Sec. 1270.) In sections 1290 and 1291 provision is made for the forfeiture and revocation of such pilot licenses following notice and hearing. As regards the *renewal* of licenses issued to pilots of Humboldt Bay, section 1292 expressly places the burden, contrary to the provisions of section 1101, *supra,* and the earlier chapter covering San Francisco, San Pablo and Suisun Bays, on the pilot to "apply for a renewal of his license ten days before its expiration, otherwise it need not necessarily be renewed".

Again, in chapter 4 we find specific provisions covering a designated harbor, viz., San Diego harbor. Herein we find express legislation for the licensing of pilots by the board of harbor commissioners of that harbor for a term of twelve months, which licenses "shall be annually renewed unless the board has good cause to withhold renewal". In the event a pilot's license is not to be renewed he is entitled to ten days' notice thereof and a full hearing before the board (sec. 1371). Therefore, as regards the renewal (which is the immediate problem to which we are now directing our attention) of the

licenses of pilots for San Diego harbor, we find specific provision therefor consistent with the language of section 1101, *supra,* but contrary to appropriate provisions governing other bays and harbors, the legislature thus again evincing its intention to legislate specifically in certain instances.

Division VI of the Harbors and Navigation Code is divided into three parts and contains many provisions pertinent to the operation and regulation of San Francisco, San Diego and Eureka harbors, exclusive of the licensing of pilots therefor. Division VII of said code likewise is without pertinency to our present inquiry.

■ Division VIII of the code provides for the formation, government and regulation of several types of harbor and port districts. In part 1 provision is made for the creation and operation of "Municipal Port Districts" with an express and specific grant of powers to the governing board thereof. The same is generally true of part 2 having to do with "Harbor Improvement Districts", of part 3 dealing with "Harbor Districts", of part 4 covering "Port Districts", of part 5 dealing with "Recreational Harbor Districts" and of part 6 having to do with "River Port Districts". We shall direct our consideration exclusively to the specific provisions of part 4 concerning "Port Districts" for it is conceded that the respondent district comes within the purview of the districts contemplated and legislated for therein. The formation of such a "port district" is provided for in chapter 1 and in chapter 2 it is declared, among other things, that the district "shall be governed by a board of port commissioners" consisting of five members appointed in a designated manner. In section 6249 power is conferred on the board to "prescribe rules and regulations pertaining to the selection of officers and employees of the district", with the added proviso that "the term of each officer appointed by the board shall be during the pleasure of the board". In *People* v. *Woodbury,* 14 Cal. 43, it was held that a pilot appointed by a local authority to pilot boats over a bar or in designated waters, or to a particular port, is a public officer. This decision was referred to with approval in *People* v. *Abbott,* 16 Cal. 358, and *Spreckels* v. *Graham,* 194 Cal. 516, 528 [228 Pac. 1040].

A district created under this part of the code is by section 6290 declared to be "a public corporation created for municipal purposes" and by section 6299 "it has *exclusive jurisdic-*

*tion over, and it may provide for and supervise pilots* and the pilotage of seagoing vessels from the end of jurisdiction of existing pilot authorities to points lying upon any navigable waterway project of the United States, entering the district''.

We are satisfied from our review of the entire Harbors and Navigation Code, with particular emphasis on sections 6249 and 6299 thereof, which appear in that part of the code governing the formation and regulation of port districts of the character and status of the respondent district, that the legislature by express and specific enactment has definitely conferred upon the respondent members of the board of port commissioners of the respondent port district exclusive power to appoint, regulate and to refuse to reappoint pilots for the respondent port district. The definite omission by the legislature of any provision for licensing of pilots for such a district for a designated period or to provide for notice and hearing in the event of a contemplated refusal to renew a pilot's license, contrary to its express mandate in these particulars as regards other districts, ports and harbors, leads to the inevitable conclusion that pilots in and for the respondent district, and districts similarly situated, serve at the pleasure of the appointing power, viz., the board of port commissioners of said district. ▮ It is declared in *Matter of Carter,* 141 Cal. 316, 320 [74 Pac. 997], that ''in creating an office the government can impose such limitations and conditions with respect to its duration and termination as may be deemed best, and that in such a case the incumbent takes the office subject to the conditions which accompany it. It may always be terminated in such manner and by such means as are prescribed by the law which created it''. In other words, the absence of a fixed statutory term of license and provision for notice in the event of nonrenewal thereof (as is elsewhere provided in the code as to other districts), together with the grant to the respondent board of ''exclusive'' jurisdiction and supervision over pilots in and for the respondent district, are indicative of a legislative intention that the petitioner, and others similarly situated, are licensed as pilots for such district at the pleasure of the district and its governing board and that respondents in their conduct and operation of the port of Stockton, and in their discretion, are not required to renew such licenses, whether prior licenses have been permitted to run for the entire period for which

they may have been issued by the board or have been suspended or revoked in advance thereof. In either event, the respondent district and board are not required, in our opinion, to renew the same and such conclusion adequately determines the proceeding second above entitled wherein, as already stated, petitioner seeks to compel a renewal of a prior license.

There are other cogent reasons that appear from an examination of the Harbors and Navigation Code, some of which are mentioned in respondents' briefs, but which need not be here set forth in detail, definitely indicating that section 1101, *supra*, is inapplicable and that respondents need not renew petitioner's license and that *mandamus* should not, therefore, issue herein. Briefly these reasons are that section 1101 applies to licenses issued by *"pilot* commissions''. San Francisco, San Pablo and Suisun Bays, and perhaps others, have *"pilot* commissions''. The respondent district is governed by a *"port* commission''. The legislature may have used these varying terms advisedly. Secondly, chapter 1 of division V, wherein appears section 1101, contains other sections and provisions apparently inapplicable to districts of respondents' status. Thirdly, sections 1100 to 1116 of the code were formerly in existence as sections of the Political Code and antedate by many years the legislature's enactment in 1931 of a policy governing port districts, such as the respondent district.

█ Whether the respondents after issuing a (prior but now expired) license to petitioner for a term fixed *by them* at one year may, without notice or hearing, suspend or revoke the same need not here be decided. Determination of this point is not indispensable to the disposition of these mandate proceedings, the principal purpose of which is to compel *reinstatement* of such prior license now expired and the issue therefore moot (Sac. 5265) and to compel issuance of a *renewal* license for an additional period (S. F. 16132), which issuance, as we have shown, is a matter within the exclusive jurisdiction of the governing board of the respondent district. If, as petitioner urges, the respondents acted improperly in suspending or revoking, without notice and hearing, his prior but now expired one–year license theretofore issued by them, and are therefore answerable to him for the loss of pilot fees from the date of such revocation to the expiration date of such prior licenses, a point upon which we express no opinion, it

would seem that that issue, involving as it will controverted questions of fact as to the cause or causes for such revocation and as to the damages, if any, caused thereby, together with a question as to the legal liability of the respondents, may best be determined in an action, if deemed advisable, based on such alleged wrongful revocation and asserted resulting damages, triable before a court charged with and equipped for the preliminary finding of the pertinent facts. It is not our purpose to indicate that such an action will lie under the assumed circumstances, but taking petitioner's contention at its face value, and without expressing an opinion thereon, the matter may best be determined elsewhere.

In conclusion, we desire to state that the effect of respondents' action, whether proper or improper, is not, as urged, to deprive petitioner of all means of livelihood as a pilot. He is free to pursue such calling under any license that he may procure from the appropriate federal authorities or any of the several local boards or commissions vested with power to issue such licenses.

The judgment in the proceeding numbered Sac. 5265 is affirmed. The alternative writ issued in the proceeding numbered S. F. 16132 is discharged and a peremptory writ denied.

Curtis, J., Langdon, J., Edmonds, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.